**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**



---

CLAUDE MASSIAH and NATALIE MIELES,
individually and on behalf all others similarly
situated,

                              Plaintiffs,

          v.

METROPLUS HEALTH PLAN, INC. and NEW
YORK CITY HEALTH AND HOSPITALS
CORPORATION,

                              Defendants.

---

No. 11-cv-05669 (BMC)

~~[PROPOSED]~~ **FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS'**
**MOTIONS FOR CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, AND APPROVAL OF FLSA SETTLEMENT,**
**FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES,**
**AND FOR CLASS REPRESENTATIVE SERVICE AWARDS**

Plaintiffs and the class members are approximately 552 current and former Marketing

Representatives, Document Collection Specialists, Retention Representatives, or Business to

Business Representatives (collectively, "Marketing Representatives") who work or worked for

MetroPlus Health Plan Inc. ("MetroPlus") and New York City Health and Hospitals Corporation

("HHC") (collectively, "MetroPlus" or "Defendants") in New York. Plaintiffs' job duties

involved educating and assisting eligible individuals about available health insurance options and

completing health insurance applications, collecting and photocopying documentation that

supports the individual's eligibility for Medicaid, Medicare, or other health insurance programs.

On November 18, 2011, Plaintiffs Claude Massiah and Natalie Mieles filed a class and

collective lawsuit on behalf of MetroPlus Marketing Representatives who worked in New York,

claiming that Defendants violated the overtime provisions of the FLSA and NYLL by failing to pay its Marketing Representatives overtime for hours worked over forty in a week.   On January 4, 2012, Defendants answered the Complaint and filed a motion to dismiss, or in the alternative for summary judgment of, Plaintiffs' NYLL claim arguing that since Marketing Representatives were employees of a city agency or political subdivision, the protections of the NYLL would not apply to them.  On April 11, 2012, the Court denied Defendants' Motion to Dismiss on the grounds that neither defendant is a political subdivision for purposes of the NYLL.

On January 6, 2012, Plaintiffs sent a Court-approved notice to current and former Marketing Representatives who were employed by Defendants within three years of the mailing of the notice.  A total of 163 Marketing Representatives opted in to the case.

On May 29, 2012, after engaging in significant investigation and discovery to enable Plaintiffs to calculate damages and undertake extensive settlement negotiations, the parties reached a settlement totaling $4,040,000.  (Decl. of Justin M. Swartz in Support of Plf.'s Mot. for Certification of Settlement Class, Final Approval of Class Action Settlement, and Approval of FLSA Settlement ("Swartz Decl.") ¶ 28); Swartz Decl., Ex. A (Settlement Agreement).  On August 3, 2012, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members") and authorizing notice to all Class Members.  (Docket No. 88).

On August 24, 2012, Settlement Services Inc., a third-party claims administrator, sent the Notice to all Class Members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek aggregate service awards of $10,000 for the named plaintiffs, up to one-third of the settlement fund for Class Counsel's attorneys' fees, and out-of-

2

pocket expenses.  No Class Members objected to the terms of the settlement and no Class

Members requested exclusion.

On November 9, 2012, Plaintiffs filed their Motion for Certification of Settlement Class,

Final Approval of Class Action Settlement, and Approval of FLSA Settlement ("Motion for

Final Approval").  On November 12, 2012, Plaintiffs also filed their Motion for Approval of

Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and their

Motion for Class Representative Service Awards ("Motion for Service Awards").  As part of the

Settlement Agreement, Defendants agreed not to oppose these motions.

The Court held a fairness hearing on November 13, 2012.  Having considered the Motion

for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Award, the

supporting declarations, the arguments presented at the November 13, 2012 fairness hearing, and

the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Approval of the Settlement Agreement**

1.      The Court hereby grants the Motion for Final Approval and approves the

settlement on behalf of the class as set forth in the Settlement Agreement and this Order under

Federal Rule of Civil Procedure 23.

2.      Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  To

determine whether a settlement is procedurally fair, courts examine the negotiating process

leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a

settlement is substantively fair, courts evaluate whether the settlement's terms are fair, adequate,

3

and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d

448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d

43 (2d Cir. 2000).

      3.      Courts examine procedural and substantive fairness in light of the "strong judicial

policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also*

*Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7,

2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent

fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties

who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ.

10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

      4.      "In evaluating the settlement, the Court should keep in mind the unique ability of

class and defense counsel to assess the potential risks and rewards of litigation; a presumption of

fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length

negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab*

*Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May

11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties'

judgment that the settlement is fair and reasonable. *See Torres v. Gristede's Operating Corp.*,

Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21,

2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y.

Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

      ***Procedural Fairness***

      5.      The settlement is procedurally fair, reasonable, adequate, and not a product of

collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).   Here, the settlement was reached after Class Counsel had conducted a thorough investigation, engaged in significant discovery, and evaluated the claims, and after extensive negotiations between the parties.  The parties engaged in extensive investigation before agreeing to settle the lawsuit, including conducting detailed interviews with more than 100 Marketing Representatives regarding their job duties and hours worked.  Defendants produced information relating to each potential plaintiffs' dates of employment. In addition, the parties relied on some of the discovery from *Drayton*, where Defendants deposed the named Plaintiffs and one opt-in Plaintiff and Plaintiffs deposed two Fed. R. Civ. P. 30(b)(6) witnesses and produced hundreds of pages of documents in response to Plaintiffs' document requests.  The parties also responded to interrogatories and document requests.  Defendants produced hundreds of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, emails, and memoranda. From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiffs' claims.

### Substantive Fairness

6.      The settlement is substantively fair.  All of the factors set forth in *City of Detroit.*, 495 F.2d at 463, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

7.      The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at

463.

8.      Litigation through trial would be complex, expensive, and long.  Therefore, the

first *Grinnell* factor weighs in favor of final approval.

9.      The class's reaction to the settlement was positive.  The Notice included an

explanation of the allocation formula and an estimate of each class member's award.  (Swartz

Decl., Ex. B ("Patton Decl.")) ¶ 3).  The Notice also informed class members that they could

object to or exclude themselves from the settlement, and explained how to do so. (Swartz Decl. ¶

31); (Swartz Decl., Ex. F Court-Authorized Notice).

10.      No Class Members have objected to or requested exclusion from the settlement.

This favorable response recommends final approval.  "The fact that the vast majority of class

members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553

F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class

members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011

WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class

member submitted timely objections and only 2 requested exclusion).  As of November 9, 2012,

class Counsel's efforts have resulted in a 79% participation rate.  This 79% participation rate is

well above average in class action settlements. *See* 2 McLaughlin on Class Actions § 6:24 (8th

ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.");

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (noting

that only 12% of the class responded to the notice by filing a claim to share in the settlement);

Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 9-37

6

(2000) ("It was estimated that somewhere between 14 and 33 percent of all eligible consumers filed claims in the Levi Strauss suit."); William Simon, Class Actions-Useful Tool or Engine of Destruction, 55 F.R.D. 375, 379 (1973) ("Even after a settlement, where class members are notified that they can share in the recovery merely by filing a simple proof of claim, only 10% to 15% bother to do so"). Therefore, the second *Grinnell* factor weighs in favor of final approval.

11.     The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs conducted extensive interviews of over 100 class members. In addition, in *Drayton*, Class Counsel obtained substantial discovery, including documentary evidence, declaration testimony, deposition testimony, interviews, and data on Class Members' damages. The third *Grinnell* factor weighs in favor of final approval.

12.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, a trial on the merits would involve significant risk as to both liability and damages. Plaintiffs would be required to prove the amount and extent of overtime that they worked through testimony because Defendants did not keep accurate records of their hours. Defendants' potential appeal of the Court's decision denying their motion to dismiss and the risks of Fed. R. Civ. P. 23 class certification amplifies these risks. The proposed settlement alleviates this uncertainty. The fourth and fifth *Grinnell* factors weigh in favor of final approval.

7

13.     The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval.  A motion to certify and/or decertify the class would likely require more extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing.  Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell* factor weighs in favor of final approval.

14.     The risk of collection weighs in favor of final approval, because the settlement decreases the risk of collection.  Accordingly, the seventh *Grinnell* factor favors final approval.

15.     The substantial amount of the settlement weighs strongly in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Moreover, when a "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (March 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). The eighth and ninth *Grinnell* factor favors final approval.

**Approval of FLSA Settlement**

16.    The Court hereby approves the FLSA settlement.

17.    The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *Sewell*, 2012 WL 1320124, at *10; *Torres*, 2010 WL 5507892, at *6.

18.    Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1353-54 (11th Cir. 1982).  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7.

19.    The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation.

**Dissemination of Notice**

20.    Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). (Swartz Decl., Ex. B ("Patton Decl.")) ¶¶ 3-4.)  This Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness

9

hearing conducted on November 13, 2012.   Class Members were provided the best notice

practicable under the circumstances.   The Court further finds that the Notice and distribution of

such Notice comported with all constitutional requirements, including those of due process.

### Award of Fees and Costs to Class Counsel and Award of Service Awards to Named Plaintiffs and Opt-In Plaintiffs

21.     On August 3, 2012, the Court appointed Outten & Golden LLP as Class Counsel

because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

22.     Class Counsel did substantial work identifying, investigating, prosecuting, and

settling Plaintiffs' and the Class Members' claims.

23.     Class Counsel have substantial experience prosecuting and settling employment

class actions, including wage and hour class actions, and are well-versed in wage and hour law

and in class action law. *See Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's

experience representing plaintiffs in class actions" supported fee award); *Frank v. Eastman*

*Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one

factor supporting an attorneys' fee award of 40% of the fund).

24.     The work that Class Counsel have performed in litigating and settling this case

demonstrates their commitment to the Class and to representing the Class's interests.   Class

Counsel have committed substantial resources to prosecuting this case.

25.     The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class

Counsel $1,212,000 in attorneys' fees, or thirty percent of the fund (including any interest in the

fund).

26.     The Court finds that the amount of fees requested is fair and reasonable using the

"percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See*

*McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v.*

*Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *13 (S.D.N.Y.

Apr. 16, 2012) (following percentage-of-the-fund method); *Willix*, 2011 WL 754862, at *6

(same); *Diaz*, 2010 WL 5507912, at *7-8; *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v.*

*Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same);

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y.

2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-*

*Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

    In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee

award. *See Toure v. Amerigroup Corp.*, 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug.

6, 2012); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13

(S.D.N.Y. Apr. 16, 2012); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6

(E.D.N.Y. Feb. 18, 2011).  Where relatively small claims can only be prosecuted through

aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l*

*Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Attorneys who fill the private attorney general role

must be adequately compensated for their efforts.  If not, wage and hour abuses would go

without remedy because attorneys would be unwilling to take on the risk. *Goldberger v.*

*Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in

favor of providing lawyers with sufficient incentive to bring common fund cases that serve the

public interest").  Adequate compensation for attorneys who protect wage and hour rights

furthers the remedial purposes of the FLSA and the NYLL. *Sewell*, 2012 WL 1320124, at *13;

*Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *see also Khait v.*

*Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)

("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial

purposes of the FLSA and NYLL."); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).

Class Counsel's request for thirty percent of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one-third of a $42 million settlement in a FLSA and NYLL misclassification case); *Willix*, 2011 WL 754862, at *6-7 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action. *Toure*, 2012 WL 3240461, at * 5 (awarding one-third of $4,450,000 in a wage and hour misclassification case). Request for one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Toure*, 2012 WL 3240461, at * 5 *Id*. at * 5. Courts in this Circuit have routinely granted requests for one-third or more of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait*, 2010 WL 2025106, at *8-9 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit); *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA*, No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement). A fee of 30% of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (internal quotation marks omitted).

27.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.  A percentage-of-recovery fee award of one-third is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *6; *Willix*, 2011 WL 754862, at *7; *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

28.     All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third of the fund.

29.     The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Toure*, 2012 WL 3240461, at *6 (Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time").

30.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $4,486.26, which the Court deems to be reasonable.  Courts typically allow

counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

31.     The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement.

32.     The Court finds reasonable service awards of $5,000 each to Claude Massiah and Natalie Mieles.  These amounts shall be paid from the settlement.  Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell,* 2012 WL 1320124, at *14-15 (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes*, 2011 WL 4599822, at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix*, 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres*, 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action);  *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort

14

expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

**Conclusion and Dismissal**

33.     The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

34.     This entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have *res judicata* effect with respect to all FLSA Collective Action Members, and all Rule 23 Class Members who do not opt out of the applicable classes.

35.     The Court approves of the release of the Released Federal Law Claims and Released State Law Claims, which shall be binding on all FLSA Collective Action Members. The Court approves of the release of the Released State Law Claims, which shall be binding on all Rule 23 Class Members who do not opt out of the applicable classes.

36.     Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state laws or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

37.     Without affecting the finality of this Final Order, the Court retains jurisdiction over this action for the purpose of receiving the Consent forms returned by the FLSA Collective

Action Members, and for enforcing the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

38.    This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED this 16 day of _Nov_____, 2012.

s/Brian M. Cogan

Honorable Brian M. Cogan
United States District Judge

16